## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ROGER CHIMNEY,
 *Plaintiff*,

  v.          No. 3:21-cv-00321 (JAM)

ANGEL QUIROS *et al.*,
 *Defendants*.

### ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Roger Chimney is a prisoner in the custody of the Connecticut Department of Correction ("DOC"). He filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 principally alleging that prison officials were deliberately indifferent to his serious medical needs and that they retaliated against him in violation of his constitutional rights.

I have previously entered an initial review order dismissing some of the defendants and some of Chimney's claims. *See Chimney v. Quiros*, 2021 WL 5281608 (D. Conn. 2021). The remaining named defendants—Deborah Broadley, Sandra Charles, Kidd Collins, Ingrid Feder, Shaina Jones, and Jane Ventrella—now move for summary judgment on the grounds that Chimney did not exhaust his administrative remedies and that no genuine issue of fact supports Chimney's claims.[1] For the reasons set forth below, I will grant the defendants' motions for summary judgment.

### BACKGROUND

Before discussing the facts of this case, it is necessary to review the basic rules that govern what a court may accept as a "fact" for purposes of a summary judgment motion. Most

---

[1] In addition, the initial review order allowed Chimney to proceed against two additional partially-named defendants—"Ann" and "Paul"—who have yet to be identified by their full or true names or to have been served with the complaint. This action remains pending against them, and I will enter a separate order setting forth a deadline for Chimney to identify these defendants so that they may be served.

motions for summary judgment are fact-intensive, and a judge has to figure out if there are enough disputed facts to create a genuine issue for trial. But for a case like this one where there are multiple claims against multiple defendants over an extended period of time, it can be hard to figure out which issues of material fact are genuinely disputed by the parties and which are not.

For this reason, the Court's local rules require the parties to present their versions of the facts in an orderly and structured manner that is designed to allow a judge to ascertain what facts are settled and what facts are in dispute. First, the party who seeks summary judgment must file an enumerated statement of facts that is accompanied by specific citations to supporting evidence, and the party must also file a copy of the admissible evidence that supports each individual statement of fact. *See* D. Conn. L. Civ. R. 56(a)(1), (3). Second, the party who opposes the motion for summary judgment must file their own statement of facts that responds one-by-one to each of the moving party's enumerated statement of facts. *See* D. Conn. L. Civ. R. 56(a)(2)(i). The opposing party must state whether the fact is admitted or denied, and—if denied—what admissible evidence there is to deny the asserted fact, and they must likewise file this opposing evidence on the record. *See* D. Conn. L. Civ. R. 56(a)(2)(i), (3). The opposing party also has an opportunity to set forth additional facts (along with the filing of supporting evidence) that it believes are material to whether the Court should grant summary judgment. *See* D. Conn. L. Civ. R. 56(a)(2)(ii), (3). If a party fails to comply with these core requirements for how the evidence must be presented and supported, the Court may resolve factual issues against the party who has not complied. *See* D. Conn. L. Civ. R. 56(a)(3).

Many of the cases before the Court involve *pro se* plaintiffs against one or more defendants who are represented by counsel. If a represented defendant files a motion for summary judgment, the Court's rules require that they must also file and serve a notice reciting

the rules I have just described so that the plaintiff will understand what they must do to file a proper response to a motion for summary judgment. *See* D. Conn. L. Civ. R. 56(b).

In a perfect world, a *pro se* plaintiff would comply with the rules. But of course we do not live in such a world. And it is well accepted that courts must "liberally constru[e] *pro se* submissions" with an "understanding that implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156–57 (2d Cir. 2017) (*per curiam*).

The defendants in this case are represented by counsel and they have complied with all the rules I have described above concerning their filing of motions for summary judgment.[2] But Chimney has not. He has filed a welter of documents in response to the motions for summary judgment.[3] Although it is apparent that he has made some effort to comply with the Court's rules, his submissions have nonetheless made it more difficult as I will describe below to discern to what extent he disputes specific facts and—if so—to what extent his objections to particular facts are supported by admissible evidence.

Defendant Sandra Charles filed a motion for summary judgment, and the other named defendants—Deborah Broadley, Kidd Collins, Ingrid Feder, Shaina Jones, and Jane Ventrella— filed another motion. Both contain statements of material fact as required by Local Rule 56(a)(1), and these asserted facts are supported by evidentiary exhibits including affidavits of the defendants.[4] Instead of submitting a Local Rule 56(a)(2) statement in response to either one of these summary judgment motions, Chimney has filed nine different statements in opposition to

---

[2] Doc. #61-2; Doc. #61-6; Doc. #80-2; Doc. #80-3.
[3] Doc. #86; Doc. #115; *see also* Doc. #117 (duplicate of Doc. #115-9).
[4] *See* Doc. #61; Doc. #80.

each of the affidavits submitted by the defendants in support of summary judgment.[5] He has also filed two "Argu[]ment Points," which appear to be memoranda in opposition to summary judgment, two statements of Additional Material Fact, and two filings of portions of his medical records.[6]

Chimney's approach presents several problems. For one, instead of following Local Rule 56(a)(2)'s requirement that he respond to the defendants' Local Rule 56(a)(1) statements, he has confusingly responded to each of the underlying affidavits submitted by the defendants in support of their Rule 56(a)(1) statements of facts. For another, Chimney includes most of his arguments in his own affidavit responses rather than in his memoranda in opposition to summary judgment. Ordinarily, a party is "deemed to have waived any argument in support of an objection that such party does not include in its memorandum of law." D. Conn. L. Civ. R. 56(a)(2)(i).

But "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). Moreover, "[a] local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply." Fed. R. Civ. P. 83(a)(2). In light of Chimney's *pro se* status, I will overlook the fact that Chimney has not filed a proper Local Rule 56(a)(2) statement that disputes the statements set forth by the defendants in their Local Rule 56(a)(1) statements (as opposed to filing nine different statements that dispute the defendants' individual affidavits). And I will overlook the fact that Chimney decided to make legal arguments in his own factual affidavit responses rather than confining his legal arguments to his memoranda of law.

---

[5] *See* Doc. #86; Doc. #115.
[6] Doc. #86-1; Doc. #87; Doc. #115; Doc. #115-1; Doc. #116.

Still, there is a third problem that I decline to overlook: Chimney's frequent failure to cite and include admissible evidence in response to many of the facts as asserted and properly supported by the defendants in their summary judgment motions. There is no doubt that Chimney knew he must adduce admissible controverting evidence, and his failure to do is indicative that he has no such evidence. Indeed, rather than pointing to evidence that controverts the defendants' factual statements, Chimney often denies the statement and then embellishes his response with argumentative or rhetorical questions.[7]

As the Second Circuit has explained, a plaintiff's "*pro se* status [does] not eliminate his obligation to support his claims with some evidence to survive summary judgment," and "[h]is reliance on 'conclusory allegations' and 'unsubstantiated speculation' could not suffice." *Nguedi v. Fed. Rsrv. Bank of N.Y.*, 813 F. App'x 616, 618 (2d Cir. 2020). Therefore, for those properly supported facts set forth by the defendants that Chimney fails to properly dispute, I will deem those facts to be true as is allowed under Rule 56(a)(3).

That said, all of Chimney's statements are sworn. Sworn statements qualify as admissible evidence for summary judgment purposes. *See* Fed. R. Civ. P. 56(c)(4); D. Conn. L. Civ. R. 56(a)(3); *Brandon v. Kinter*, 938 F.3d 21, 33–34 (2d Cir. 2019); *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 51 n.7 (2d Cir. 2022). I will therefore treat Chimney's responses to the defendants' affidavits and his statements of additional material fact as sworn affidavits for the purpose of summary judgment. *See Marshall v. City of Meriden*, 2017 WL 5513201, at *2 (D. Conn. 2017); *N. Trade U.S., Inc. v. Guinness Bass Imp. Co.*, 2006 WL 2263885, at *2 (D. Conn. 2006)

---

[7] *See, e.g.,* Doc. #115-4 at 3 (¶ 15) ("Explain 'nurse sick call', what level of care is this? What is the response time for sick call? Denied."); Doc. #115-9 at 3 (¶ 13) ("Denied. Who? When? Plaintiff never knew he had edema. And if another provider, why wasn't the missed appointment rescheduled?"); *id.* at 4 (¶ 16) ("Denied in question. So what were your particular thoughts? Concerns? Notes?").

("[C]ourts generally … treat written statements subject to the penalty of perjury as the equivalent of an affidavit for summary judgment").

"But in order to resist a motion for summary judgment, a plaintiff's affidavit must be based upon concrete particulars, not conclusory allegations." *Tassy v. Buttigieg*, 51 F.4th 521, 531 (2d Cir. 2022); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ("The object of [Federal Rule of Civil Procedure 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). Moreover, Chimney's affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 138 (2d Cir. 2009). It is not enough for Chimney simply to offer a sworn denial in response to a particular statement of fact if he has no apparent basis in personal knowledge to dispute that the statement is true.

Finally, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Vega v. Rell*, 611 F. App'x 22, 25–26 (2d Cir. 2015) (declining to credit prisoner's claims that were contradicted by his medical records). Multiple courts have declined at summary judgment to credit statements by a plaintiff that are flatly contradicted by contemporaneous medical records. *See Smith v. City of New York*, 2021 WL 4267525, at *6–7 (S.D.N.Y. 2021) (collecting cases); *Henry v. Brown*, 406 F. Supp. 3d 211, 214 (E.D.N.Y. 2016) (same); *Cabassa v. Ostheimer*, 2017 WL 2785334, at *3 (D. Conn. 2017) (declining to credit prisoner's sworn statement that he never

received pain medication in light of prison medical record showing that he received pain medication).

In short, for purposes of my detailed recitation below of the facts that I believe to be undisputed, I have overlooked as described above Chimney's failure to file a proper Local Rule 56(a)(2) statement as well as his intermixing of facts and legal argument within his affidavits. But I decline to overlook Chimney's frequent failure to cite and present admissible evidence to controvert the defendants' statements of fact. Nor will I credit facts asserted by Chimney that are blatantly contradicted by his medical records.

Chimney was placed in DOC custody at Hartford Correctional Center ("HCC") on November 20, 2019, and he was transferred to Cheshire Correctional Institution ("CCI") on November 29, 2019.[8] On December 9, 2019, nurse Shaina Jones processed a referral-to-nursing for Chimney after Chimney complained of pain throughout his body.[9] Chimney met with a nurse the same day.[10]

Chimney was transferred back to HCC on January 17, 2020.[11] On February 28, 2020, CCI nurse Deborah Broadley reviewed Chimney's medical records from outside providers.[12] She

[8] Doc. #80-2 at 1 (¶ 2), 3 (¶ 14); Doc. #80-15 at 2. Chimney disagrees with several dates in the defendants' statements. *E.g.*, Doc. #86 at 6 (¶ 37); Doc. #115-2 at 1 (¶¶ 11–13); Doc. #115-4 at 2 (¶ 12); Doc. #115-8 at 1 (¶ 10); Doc. #115-9 at 3 (¶ 11). But he does not explain how the exact dates are material. This ruling does not attempt to catalogue every instance in which Chimney's denials are insufficient.

[9] Doc. #80-2 at 3 (¶ 15); Doc. #80-8 at 4 (¶ 15); *see* Doc. #81 at 389. Chimney further alleges that on December 17, 2019, Jones emailed a counselor named Martinez that Chimney would be seen soon. Doc. #115-4 at 1 (¶ 6) (citing Doc. #1 at 11 (¶ 20), 16 (¶¶ 49–50)); *see also id.* at 2 (¶ 14). I will not credit this allegation because it is not based on Chimney's personal knowledge, and it is hearsay. Jones further states that that "If I met with the plaintiff and provided him medical care, there would be a corresponding record of such care in his medical records. Additionally, his medical records would contain documentation if I took any action related to his medical care." Doc. #80-8 at 3 (¶ 9). Chimney denied Jones's statement, writing that "It's common for inmates with complaint to enter medical department and speak to medical personnel(s) other than who signs medical report for that moment by the nurse initially overviewing the inmate's visit." Doc. #115-4 at 2 (¶ 9). Chimney further asserts that he met with Jones "on se[ver]al occas[]ions, even twice at my cell door." *Id.* at 3 (¶ 20). But without more information—when this occurred, what they spoke of or what actions Jones took, or how her meeting Chimney on more than one occasion is a material fact in dispute—I will not credit these conclusory allegations.

[10] Doc. #80-2 at 3 (¶ 16); Doc. #80-8 at 4 (¶¶ 15–16); Doc. #81 at 388.

[11] Doc. #80-2 at 4 (¶ 19); Doc. #80-15 at 2.

[12] Doc. #80-2 at 4 (¶ 20); Doc. #80-6 at 3 (¶ 14).

made notations in the records that his esophagus examination showed that he had a normal esophagus, that his stomach ulcer was healing, and that he tested positive for the bacterium *H. pylori*.[13] Broadley also noted that Chimney's colonoscopy showed the presence of an adenoma in his rectum and ascending colon.[14] She emailed HCC medical staff to follow up with Chimney regarding his medical needs.[15]

On April 6, 2020, Chimney filed a CN 9602 grievance form with HCC, stating the following:

> A CN 9601 [informal grievance resolution form] has been sent on 12 occasions to Medical. I've received no reply (Even spoke to [Deputy Warden] Washington). I came in with bleeding ulcers, I've complained about blood in my stool, blood in my sal[i]va, As well as vomit, pain in my joints, muscles. Speaking to one nurse, I was told to just pray I live long enough to get out, that If I'm not dying with the corona virus, don't look for medical attention. I haven't even received the small meds of bulk I once did. This same problem occur[r]ed here back in Nov. 2019. I was sent to Cheshire, they did the we trying to help you until they sent me back here.[16]

On April 30, 2020, Chimney met with Dr. Ruiz, an HCC doctor who reviewed the records from outside providers and treated him for acid reflux and *H. pylori* infection.[17] The same day, Chimney received a "no further action" response to his CN 9602 form, explaining as follows:

> You were seen by Dr. Ruiz MD. Medical Records for [unintelligible] Hosp—EGD [esophagogastroduodenoscopy, an esophagus examination] & colonoscopy [unintelligible], you were found to have a bacteria in your stomach = H. pylori and polyp in colon rectal. Pantoprazole for GERD [gastroesophageal reflux disease] ordered. Treatment of H. pylori [unintelligible] GI requested. Tylenol for muscular pain ordered.[18]

---

[13] Doc. #80-2 at 4 (¶ 20); Doc. #80-6 at 3 (¶ 14); Doc. #81 at 362.
[14] Doc. #80-2 at 4 (¶ 20); Doc. #80-6 at 3 (¶ 14); Doc. #81 at 362.
[15] Doc. #80-2 at 4 (¶ 20); Doc. #80-6 at 3 (¶ 14); Doc. #81 at 362.
[16] Doc. #80-13 at 2–3.
[17] Doc. #80-2 at 4–5 (¶ 21); Doc. #81 at 262–64.
[18] Doc. #80-13 at 3.

The form further noted that Chimney had exhausted DOC's administrative remedies.[19]

HCC nurse Kidd Collins met with Chimney on May 20, 2020 about skin discoloration in Chimney's legs and a spot on his right foot, gave him dietary advice, and referred him to the medical provider sick list for further evaluation.[20] On June 5, 2020, Chimney was transferred to Corrigan Radgowski Correctional Center ("CRCC"), and Collins transferred Chimney's medical records to that facility.[21]

On September 4, 2020, a nurse met with Chimney, ordered a blood sugar test, and prescribed him Lantus and Lipitor—a course of treatment that Dr. Ingrid Feder, a physician at CRCC, approved.[22] Ten days later, Dr. Feder reviewed Chimney's blood sugar records, prescribed him Metformin, an antidiabetic medication, and ordered a repeat blood sugar test.[23]

On October 14, 2020, Dr. Feder prescribed Lisinopril, a high blood pressure medication, and ordered a blood pressure check.[24] On November 7, 2020, Chimney submitted a CN 9601

---

[19] *Ibid.*

[20] Doc. #80-2 at 6 (¶ 27); Doc. #80-7 at 4 (¶ 18). Chimney denies that the meeting occurred, writing that COVID-19 protocol would not have permitted an encounter in his cell. Doc. #115-8 at 2 (¶ 18). I will not credit Chimney's assertion because it is blatantly contradicted by the medical record. *See* Doc. #81 at 244–46.

[21] Doc. #80-2 at 6 (¶ 30); Doc. #80-15 at 2; Doc. #81 at 234–35. In his statement of facts in opposition to Collins's affidavit, Chimney alleges that his medical records have been falsified. *See* Doc. #115-8 at 1 (¶¶ 7–8). As evidence, he points to "medical records (included within Exhibits) of plaintiff being seen in Whalley Ave Jail in New Haven, In Niantic Jail, which is A women's prison." *Ibid.* (¶ 7). Chimney has not cited any evidence in his medical records reflecting that he was housed at Niantic Jail, also known as York Correctional Institution, and the Court having undertaken an independent review of the record has found none. Chimney is correct that one of his medical records indicates that he was located at "New Haven Correctional Center, 245 Whalley Avenue" on December 9, 2019 even though Chimney was incarcerated at CCI on that date. *See* Doc. #116 at 63; Doc. #81 at 389–90; *see also* Doc. #80-15 at 2. But Chimney does not explain how this discrepancy is material or how it indicates that his records have been falsified.

[22] Doc. #80-2 at 1 (¶ 3), 8 (¶ 38); Doc. #81 at 190.

[23] Doc. #80-2 at 8–9 (¶ 42); Doc. #80-5 at 4 (¶¶ 16–18). Chimney denies that Dr. Feder approved the nurse's course of treatment and that Dr. Feder reviewed Chimney's blood sugar records. Doc. #115-9 at 4–5 (¶¶ 16–17). I decline to credit Chimney's assertions because these facts are outside Chimney's personal knowledge and otherwise blatantly contradicted by the medical record. *See* Doc. #81 at 180, 190. Chimney further states that Dr. Feder's "own notes stated that a exam and follow up would be done before you classified plaintiff as full diabetic, but you never did." Doc. #115-9 at 5 (¶ 18). Chimney does not cite any admissible evidence for this assertion, such as Chimney's medical records. I decline to credit it.

[24] Doc. #80-2 at 9 (¶ 45); Doc. #80-5 at 4 (¶ 19). Chimney responds that Dr. Feder never met with him between September and October. Doc. #115-9 (¶ 19). But Dr. Feder does not claim to have met with him during this period.

form listing his medical problems and asking to speak with Dr. Feder.[25] Dr. Feder never saw the request and was not involved in responding to it—instead, a nurse responded that Chimney was "on the Dr.'s list to be seen for these issues."[26] Dr. Feder approved a continuation of Chimney's acid-reflux medication on January 11, 2021.[27]

At some point between June 5, 2020 and November 23, 2020, Chimney says he sought out Dr. Feder and "began speaking fast about chest pains, help with sleep apnea, pain medication."[28] Dr. Feder stopped Chimney and asked his name. When Chimney provided his name, Dr. Feder called him "a pain," did not allow him to continue speaking, and did not examine or otherwise follow up with him.[29]

On November 23, 2020, Chimney was transferred back to CCI, where nurse Jane Ventrella completed his medical intake.[30] Ventrella states that Chimney "reported his weight at 460 lbs, but he was too heavy for our scale. He voiced no issues to me."[31] Chimney contends that

---

[25] Doc. #81 at 158.

[26] Doc. #80-2 at 10 (¶ 49); Doc. #80-5 at 6 (¶ 31); Doc. #81 at 158. Chimney denies that Dr. Feder never saw his request, stating that "The response was that Plaintiff was placed on your doctor's list to be seen, but still was never seen. Is this standard practice? If so, why? Where is this practice documented? Why you never called plaintiff to be seen?" Doc. #115-9 at 7 (¶ 31). I will decline to credit Chimney's denial because whether Dr. Feder saw the request is outside of Chimney's personal knowledge and Chimney's statement is otherwise nonresponsive to Dr. Feder's assertion.

[27] Doc. #80-5 at 5 (¶ 23). Chimney conclusorily denies that Dr. Feder approved the prescription, Doc. #115-9 at 6 (¶ 23), but I decline to credit his denial because whether Dr. Feder approved Chimney's prescription is outside Chimney's personal knowledge and contradicted by the medical record. *See* Doc. #81 at 39.

[28] Doc. #115-9 at 3 (¶ 12.B); *see also* Doc. #115 at 5 (¶ 15). Chimney's statements in opposition to summary judgment do not specify when the alleged incident took place, but his complaint gives the location as CRCC. Doc. #1 at 24 (¶ 108). Chimney was incarcerated at CRCC from June 5, 2020 to November 23, 2020. Doc. #80-15 at 2.

[29] Doc. #115-9 at 3 (¶ 12.B); Doc. #115-9 at 4 (¶ 15).

[30] Doc #80-2 at 10 (¶ 51); Doc. #80-9 at 3 (¶ 15); Doc. #80-15 at 2. Chimney alleges that he "met with [Ventrella] several times, but defendant neglected to follow up with treatment to Plaintiff." Doc. #115-2 at 1 (¶ 9); *see also ibid.* (¶ 14) (denying that Ventrella had not previously met with him). Chimney also alleges that Ventrella "didn't do none of what [she] said [she] would have." *Id.* at 2 (¶ 21). Because Chimney does not specify when or how many other times Ventrella met with Chimney and how she failed to "follow up," I decline to credit Chimney's conclusory statements.

[31] Doc. #80-2 at 10 (¶ 51); Doc. #80-9 at 3 (¶ 15). In denying Ventrella's statement, Chimney writes: "Implausible given Plaintiff's History and Forwardness regarding his medical issues. Plaintiff is also A diabetic, (insulin and blood sugar check needed) high blood pressure, bottom bunk because of weight, pain medication late transfer, meds needed." Doc. #115-2 at 2 (¶ 15). But the contemporaneous medical record notes that Chimney has diabetes and high blood pressure, is overweight, and "was not transferred in with medication." Doc. #81 at 61. Because Chimney does not explain what he claims to have told Ventrella or otherwise state how Ventrella's statement is inaccurate, I

Ventrella then placed him in a cell and assured him that "rounds would be made to make sure I receive my meds and blood sugar check and insulin."[32] He met with nurse Sandra Charles two days later.[33]

On December 9, 2020, Chimney filed a second CN 9602 grievance. He stated as follows:

After going days without treatment (blood sugar testing, insulin, and blood pressure medications) I spoke to Nurse Natalie who got treatment started, but after A few days consistency left from the medical personnel, treating me as other diabetic inmates, mornings before breakfast I'm not called out daily, (I've written CN 9601 but they have not been answered) December 1, 2020 (Please save tape between 5:00 A.M. and 5:43 A.M. showing activity in dorm South Block 6) I stood in my cell door waiting to be popped out as breakfast was being served and nurse was tending to diabetics, I knocked on cell door, was told to wait, nurse left, my cell door opened I walked to officer Szast who said he would call nurse back but later came to my cell door and told me nurse told him that she didn't need me this morning—why is that?[34]

A nurse responded on January 14, 2021, rejecting his grievance on the ground that "Inmate has consistently gotten blood sugar checked each morning since 12/3/2020."[35] The response noted that Chimney had exhausted DOC's administrative remedies.[36]

---

decline to credit Chimney's statement.

[32] Doc. #115-2 at 2 (¶ 17).

[33] Doc. #80-2 at 10–11 (¶ 53); Doc. #61-2 at 1 (¶ 6); Doc. #62 at 27. Chimney denies Charles's statement that she met with him "[i]mmediately after the plaintiff's return to Cheshire … on November 25, 2020," Doc. #61-2 at 1 (¶ 6), but he does not contest that the date is inaccurate. Rather, he takes issue with the term "immediately." Doc. #86 at 1 (¶ 6) ("Plaintiff return to Cheshire C.I. on November 23, 2020, was not seen by defendant until (after 2 days of complaining for not rec[ei]ving medication, on) November 25, 2020, with 2 potentially life threatening conditions (High Blood Pressure, Diabetes Mellitus) a jury has the right and duty to decide w[h]ether A 2-day delay is immediately."). In one of his statements of additional material fact, Chimney alleges that Charles "pass[ed] off… duplicate medical copies as genuine documents of plaintiff's medical records, to fill in for missing documents." Doc. #86-1 at 2 (¶ 3). Chimney cites no evidence for this allegation, which I decline to credit because it does not appear to be based on Chimney's personal knowledge but speculation.

[34] Doc. #80-13 at 5.

[35] Ibid.

[36] Ibid.

11

In the meantime, Chimney was seen by Charles again on December 14, 2020.[37] That same day, Broadley processed Chimney's referral for his blood pressure and leg edema.[38] Chimney alleges that on this date he answered questions from several medical officials including Broadley and that he informed Broadley of his medical problems.[39] Chimney further states that Broadley told him that no hospital or CVS in Connecticut had a record of him in the last five years and warned him that he would be placed in "lock up" if he kept asking for help.[40]

On January 6, 2021, Broadley reviewed the results of an ultrasound of Chimney's lower extremities and noted a "[m]ildly complex cyst" within Chimney's right popliteal fossa—that is, behind his right knee—but found no evidence of femoral-popliteal deep vein thrombosis.[41] Broadley did not follow up on these findings with Chimney or provide treatment, stating in her affidavit that "Nothing in the results showed any medical emergency requiring immediate attention."[42] On January 12, 2021, Ventrella processed a tuberculosis test for Chimney.[43]

---

[37] Doc. #61-2 at 3 (¶ 22); Doc. #62 at 30–36; Doc #86 at 4 (¶ 22). Much of Chimney's response to Charles's statement of material fact and his statement of additional material fact consist of allegations that Charles was deliberately indifferent to his serious medical needs. *E.g.*, Doc. #86 at 9 (¶ 49), 11 (¶ 63); Doc. #86-1 at 4 (¶¶ 20–21). But I have already dismissed Chimney's deliberate indifference claim against Charles. *Chimney v. Quiros*, 2021 WL 5281608, at *7 (D. Conn. 2021).

[38] Doc. #80-2 at 11 (¶ 56); Doc. #80-6 at 4 (¶ 15); Doc. #81 at 54.

[39] Doc. #115-5 at 2 (¶ 11), 3 (¶ 19). According to Broadley, she never met with Chimney. Doc. #80-1 at 26–27; *see also* Doc. #80-6 at 3 (¶¶ 8, 12), 4 (¶¶ 17–18). Because Chimney alleges otherwise in a sworn affidavit and provides nonconclusory details about an alleged meeting, I will credit Chimney's allegations for the purpose of this summary judgment ruling.

[40] Doc. #115-5 at 3 (¶¶ 18, 20).

[41] Doc. #80-2 at 12 (¶ 58); Doc. #80-6 at 4 (¶ 16); Doc. #81 at 43. To be sure, a later paragraph of Broadley's affidavit states that the ultrasound "showed deep vein thrombosis or other medical emergency requiring treatment," Doc. #80-6 at 4 (¶ 18), but it is apparent that this is a typographical error for which Broadley intended to say "did not show" rather than "showed." This is apparent in light of Broadley's statement two paragraphs earlier that "[t]he doppler showed no presence of deep vein thrombosis" and that "[n]othing in the results showed any medical emergency requiring immediate attention." Doc. #80-6 at 4 (¶ 16). It is also apparent because of the actual medical record showing no emergency. Doc. #81 at 43. Even Chimney's response to this paragraph of Broadley's affidavit ("Deny") does not suggest that he understands it to concede that there was a medical emergency. Doc. #115-5 at 3 (¶ 18).

[42] Doc. #80-6 at 4 (¶ 16); Doc. #86 at 9 (¶ 52); Doc. #115-5 at 3 (¶ 18).

[43] Doc. #80-9 at 4 (¶ 18); Doc. #81 at 31, 37–38.

The parties dispute whether Chimney filed other grievance forms during this period. The defendants contend that Chimney only filed two CN 9602 forms: one at HCC on April 6, 2020, and one at CCI on December 9, 2020.[44] Chimney alleges that he filed additional grievances—indeed, that he "exercised full process of request and grievance forms"—but that prison officials lost or destroyed them.[45] Chimney alleges that on November 30, 2020, he "received grievance placement notice from ARC Cooper. With it was two grievances sent with complaints of medical officials misconduct, threats, refusal of medical treatment."[46] Chimney had allegedly sent the same two grievances to Health Services but was later told that Health Services never received them.[47] Chimney further alleges that he filed two grievances at CRCC in addition to four grievances submitted between December 2021 and September 2022 "against certain medical officials at Hartford Correctional Center that has not been answered."[48] At HCC, Collins told him that none of his grievances had been received by the medical staff.[49]

---

[44] *See* Doc. #80-2 at 12 (¶ 62).

[45] Doc. #86 at 11 (¶ 66); *see also* Doc. #115-4 at 2 (¶ 10) ("Part of the reason this claim was filed against defendants is because medical request forms was not being answered by defendants. Grievances were and are still being destroyed by medical officials."); Doc. #115 at 4 (¶ 13) (citing Doc. #116 at 109)); Doc. #115-3 at 1–2 (¶ 9–12); Doc. #115-7 at 1 (¶ 6).

[46] Doc. #115-3 at 2 (¶ 12).

[47] *Ibid.*

[48] Doc. #115-6 at 1–2 (¶ 9); *see also* Doc. #115-7 at 2 (¶ 11) ("In the beginning of complaining and filing complaints at Hartford Correctional Center it was impossible to submit A grievance, Plaintiff spoke to Warden Washington about it, who was accompanied by Lt. Randolph, when Lt. Randolph heard me tell Warden Washington I had submitted three grievances in which all three must have been destroyed."). Chimney also alleges that he submitted grievances that were never received, but these allegedly lost grievances were for actions that took place outside the scope of the Complaint. Doc. #115-7 at 2–3 (¶ 11) ("At Hartford Correctional Center, Plaintiff have submitted six different grievances to the process of Health Services administrative grievances looking for remedies to the medical complaints plaintiff have suffered between Oct. 2, 2022 through October 12, 2022. Dates 6/23/2022 and 7/6/2022 I sent grievances to the Health Service remedies and HCC population remedy process on the same day at the same time… I asked to see my Health Service Level One grievance, unfolded it, folded it back up and gave it both (2 grievances) back to Nurse Erin.").

[49] Doc. #115-6 at 2 (¶ 9); Doc. #115-7 at 2–3 (¶ 11). Relatedly, Chimney responds to several statements in the defendants' affidavits by claiming that without "complete" or "effective" discovery, he is unable to answer and the Court is unable to determine defendants' liability. *See* Doc. #86 at 5 (¶ 27), 6 (¶ 37), 11 (¶ 65); Doc. #115-1 at 3 (¶ 13); Doc. #115-2 at 1 (¶ 13); Doc. #115-4 at 1 (¶ 6), 3 (¶ 16); Doc. #115-6 at 1 (¶ 7); Doc. #115-7 at 2 (¶ 11); Doc. #115-8 at 1 (¶¶ 9–12). Federal Rule of Civil Procedure 56(d) "permits the district court to defer summary judgment or permit additional discovery when the nonmovant files an affidavit or declaration stating that 'for specified reasons, it cannot present facts essential to justify its opposition.'" *Sura v. Zimmer, Inc.*, 768 F. App'x 58, 59 (2d Cir. 2019) (quoting Fed. R. Civ. P. 56(d)). The Rule 56(d) affidavit or declaration must show "(1) what facts

Finally, Chimney alleges that throughout his period of incarceration the defendants altered his medical classifications.[50] The DOC classifies prisoners on a 1 to 5 scale for both mental health and general medical health, where level 5 prisoners require the greatest level of care or supervision.[51] Chimney's mental health level remained at 1 while incarcerated and his medical level ranged from 2 to 3.[52]

In March 2021, Chimney filed this action against 20 defendants. He alleged the following state and federal claims: First Amendment retaliation (Count 1), failure to inquire into essential facts (Count 2), violation of the Eighth Amendment (Count 3), failure to act (Count 4), failure to supervise (Count 5), having a policy and custom of denying or not promptly meeting with inmates (Count 6), delay of access to medical care (Counts 7 and 16), denial of serious medical

---

are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful." *UBS AG, London Branch v. Greka Integrated, Inc.*, 2022 WL 2297904, at *3 (2d Cir. 2022). Nowhere in his statements in opposition to summary judgment does Chimney state that the allegedly lost or destroyed grievances describe any of the claims now before the Court or explain which defendants were the subject of the grievances. Chimney has therefore failed to articulate how the grievances "are reasonably expected to raise a genuine issue of material fact." *Ibid*. Accordingly, I decline to defer consideration of the motion for summary judgment or reopen discovery.

[50] Doc. #86-1 at 2 (¶¶ 4–7), 8 (¶ 48); Doc. #115 at 5 (¶ 15).

[51] *See* State of Conn. Dep't of Corr., *Procurement Notice* at 19-20 (2019), available at https://portal.ct.gov/-/media/DOC/RFP/RFP-Inmate-Medical-Services-Assessment-7-19.pdf [https://perma.cc/8G5N-7629]; Univ. of Conn. Health Corr. Managed Health Care, *Inmate Classification System* at 15, 17 (July 31, 2009), available at https://health.uconn.edu/correctional/wp-content/uploads/sites/77/2016/12/E-Inmate-Care-and-Treatment.pdf [https://perma.cc/D3TP-ASXX].

[52] *See, e.g.*, Doc. #87 at 1 (classifying Chimney as mental health level 1 and medical level 3); *id.* at 17 (classifying Chimney as mental health level 1 and medical level 2). Chimney's Transfer Summaries contain a "Receiving Facility" line and a "Classifications" section. The "Classifications" section provides the prisoner's individual mental health and medical levels. In contrast, the "Receiving Facility" line appears to indicate the correctional facility's medical capabilities. For example, a Receiving Facility designation of "Med4/MH5/DOT" presumably means that the facility is capable of handling prisoners with a medical level of 4 and a mental health level of 5, and is also capable of providing DOT (directly observed therapy, *i.e.*, when a medical provider observes the patient ingesting medication). Chimney apparently believes that the Receiving Facility line indicates his own classifications. *See, e.g.*, Doc. #116 at 23. But Chimney provides no evidence that the Receiving Facility line refers to his personal classifications rather than those of the receiving facility, and in any event I do not find it plausible that every Transfer Summary lists two entirely contradictory sets of classifications for Chimney. I will therefore not credit Chimney's contention that his classifications correspond to those listed in his Transfer Summaries' Receiving Facility line. For the same reason, I will not credit Chimney's contention that he was at times designated as a DOT patient and at times not designated as a DOT patient. *See* Doc. #86-1 at 2 (¶¶ 5–6).

needs (Count 8), negligence/medical malpractice (Counts 9, 10, and 14), and deliberate indifference to serious medical needs (Counts 11, 12, 13, and 15).[53]

In November 2021, I issued an initial review order dismissing all of Chimney's claims of failure to supervise, retaliatory transfer, and failure to comply with prison directives. *See Chimney*, 2021 WL 5281608, at *6, 11. I also dismissed Chimney's Fourteenth Amendment claims of deliberate indifference to serious medical needs as to several of the defendants, but I allowed his deliberate indifference claims to proceed against Broadley, Feder, Jones, and Ventrella, as well as defendants "Ann" and "Paul." *Id.* at *11.

In addition, I allowed his First Amendment retaliation claims to proceed against defendants Broadley, Charles, Collins, Feder, and Jones, as well as defendant "Jane Doe 2". *Ibid.* I took no action on Chimney's state law claims, but noted that "[i]f there are no facially plausible federal law claims against any of the named defendants, then the Court would likely decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367." *Id.* at *1 n.4.

The remaining named defendants now move for summary judgment on two primary grounds. First, they argue that Chimney failed to exhaust his administrative remedies. Second, they argue that there is no genuine issue of fact to support Chimney's claims.[54] In addition, several defendants move to dismiss Chimney's state law negligence claims on the grounds of statutory immunity and sovereign immunity.[55]

---

[53] Doc. #1 at 46–54.
[54] Doc. #61-1 at 9–20; Doc. #80-1 at 18–38.
[55] Doc. #80-1 at 38–39.

## DISCUSSION

Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing party. My role at summary judgment is not to judge the credibility of witnesses or to resolve close and contested issues but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (*per curiam*); *Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 78 (2d Cir. 2019). Because Chimney is a *pro se* party, his pleadings and submissions on summary judgment must be given a liberal construction. *See Publicola v. Lomenzo*, 54 F.4th 108, 111 (2d Cir. 2022).[56]

### First Amendment retaliation

The defendants argue that Chimney failed to exhaust his retaliation claims. The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions … by a prisoner … until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative remedies must occur regardless of whether the remedies can provide the relief that the prisoner seeks. *See Booth v. Churner*, 532 U.S. 731, 740–41 (2001). Furthermore, prisoners must comply with all procedural rules regarding the grievance

---

[56] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

process prior to commencing an action in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006).

Even if a prisoner has availed himself of the prison grievance process, a prisoner does not exhaust his administrative remedies unless his grievance "allege[s] facts sufficient to alert corrections officials to the nature of the claim." *Singh v. Lynch*, 460 F. App'x 45, 47 (2d Cir. 2012). "Because the exhaustion requirement is intended to afford prison officials an opportunity to address the issue internally, the inmate must include sufficient information to enable prison officials to address the same claim asserted in federal court." *Gómez v. Dep't of Corr.*, 2022 WL 788261, at *3 (D. Conn. 2022) (citing *Porter*, 534 U.S. at 524–25).

The grievance need not "lay out the facts, articulate legal theories, or demand particular relief." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004). Nor need it necessarily identify the defendants by name. *See Zappulla v. Annucci*, 636 F. App'x 824, 825 (2d Cir. 2016). "All the grievance need do is object intelligibly to some asserted shortcoming." *Testman*, 380 F.3d at 697.

Administrative Directive 8.9 ("AD 8.9") governs the DOC's procedures pertaining to the provision of health services. AD 8.9 contemplates multiple stages of review for a prisoner seeking a remedy for complaints relating to health services. *See Milner v. Laplante*, 2021 WL 735909, at *2–3 (D. Conn. 2021) (describing requirements of AD 8.9).[57]

The first stage is informal resolution, whereby a prisoner must attempt to resolve the problem face-to-face with an appropriate staff member or via written request for resolution to a

---

[57] A new version of AD 8.9 became effective on April 30, 2021. *See Health Services Administrative Remedies*, CONN. DEP'T OF CORR. (Apr. 30, 2021), https://portal.ct.gov/-/media/DOC/Pdf/Ad/ad0809pdf.pdf [https://perma.cc/JQE2-DES4]. In this ruling, I refer to the prior version in effect during the events at issue in this litigation. *See* Doc. #80-14 (prior AD 8.9, effective July 24, 2012).

supervisor on an Inmate Request Form (CN 9601).[58] The prisoner must clearly state the problem and remedy requested.[59]

The second stage is the filing of a formal request for one of two types of Health Services Review ("HSR"): Diagnosis and Treatment, or Review of an Administrative Issue.[60] To do this, the prisoner must submit an Inmate Administrative Remedy Form (CN 9602) seeking a review of either "a diagnosis or treatment, including a decision to provide no treatment," or "a practice, procedure, administrative provision or policy, or an allegation of improper conduct by a health services provider."[61] For diagnosis and treatment reviews, the HSR Coordinator must schedule an appointment with an appropriate health care provider to determine a proper course of action, if any.[62]

The third stage under AD 8.9—filing an appeal—applies only to administrative issues, not diagnosis and treatment decisions.[63]

Chimney exhausted his remedies for two grievances: the April 2020 grievance at HCC about no reply to his complaints and failure to receive his medication, and the December 2020 grievance at CCI about not being treated for diabetes. For both, he submitted a CN 9602 form as AD 8.9 requires, and DOC responded to each form confirming that he had exhausted his administrative remedies.

The two grievances for which the DOC has advised him that he exhausted his administrative remedies do not allege—apart from his complaints about medical care—that he was the victim of retaliation. I have previously ruled that "a grievance that fails to identify a

---

[58] *See* AD 8.9 at 3 (§ 10).
[59] *Ibid.*
[60] *Id.* at 2–4 (§§ 9, 11–12).
[61] *Ibid.*
[62] *Id.* at 3 (§ 11(A)).
[63] *Id.* at 4 (§ 12(B)).

prison official's retaliatory reason for an adverse action is not adequate to satisfy the PLRA with respect to a court action alleging a claim for First Amendment retaliation." *Gómez*, 2022 WL 788261, at *5; *see also Munger v. Cahill*, 792 F. App'x 110, 112 (2d Cir. 2020) (retaliation claim not exhausted where grievance failed to allege retaliation); *Shifflett v. Korszniak*, 934 F.3d 356, 366 (3d Cir. 2019) (same). Although Chimney states that he filed other grievances that were lost or destroyed by prison officials, he does not claim that any of them alleged that any official retaliated against him.

Because Chimney did not exhaust his First Amendment retaliation claims, I will grant the defendants' motion for summary judgment with respect to his retaliation claims against named defendants Broadley, Charles, Collins, Feder, and Jones. For the same reason, Chimney's retaliation claim against unnamed defendant Jane Doe 2—the sole remaining claim against her— must also be dismissed.

### *Deliberate indifference*

The remaining named defendants similarly argue that Chimney failed to exhaust his claims for deliberate indifference to serious medical needs. But his two exhausted grievances, liberally construed, intelligibly allege such a claim. Chimney's April 2020 grievance with HCC alleged that he "received no reply" to his complaints, that an unnamed nurse told him not to seek treatment, and that he was not receiving the medication he had previously received. And Chimney's December 2020 grievance with CCI alleged that he had not received blood sugar testing, insulin, and blood pressure medications.

That brings me to the merits of Chimney's deliberate indifference claims. A claim of deliberate indifference to serious medical needs must meet two requirements. First, the plaintiff must have an objectively serious medical need, that is, "a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Charles v. Orange Cnty.*, 925 F.3d 73, 86

(2d Cir. 2019). Second, the defendants must subjectively have acted with deliberate indifference to the plaintiff's need. *Ibid*.

As to the first requirement: Chimney complains of a constellation of medical problems in his two grievances and his statements in opposition to summary judgment: bleeding ulcers, blood in his stool and saliva, vomiting, muscle and joint pain, denial of medication, and denial of blood sugar testing. The defendants do not contest that these needs are severe, and I will assume for purposes of this ruling that they are.

The standard for the second requirement—deliberate indifference—depends on whether the plaintiff is a sentenced prisoner or a pretrial detainee. Under the Eighth Amendment, which applies to sentenced prisoners, a prison official cannot be found liable for deliberate indifference to serious medical needs "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021). "An official's failure to alleviate a significant risk that he should have perceived but did not does not meet this standard." *Ibid.*

The due process clause of the Fourteenth Amendment, in contrast, protects *pretrial* detainees from deliberate indifference to their serious medical needs. "[T]he due process rights of a person detained but not convicted are at least as great as the Eighth Amendment protections available to a convicted prisoner." *Ibid.* "A detainee asserting a Fourteenth Amendment claim for deliberate indifference to his medical needs can allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Ibid.* "Deliberate indifference requires, at

a minimum, culpable recklessness, *i.e.*, an act or a failure to act that evinces a conscious disregard of a substantial risk of serious harm." *Ibid.*

Chimney's claims can be most charitably construed to begin at his placement in DOC custody on November 20, 2019. Chimney spent time as a sentenced inmate during this period: from November 20, 2019 to January 23, 2020, on February 10, 2020, and on and after October 30, 2020.[64] He spent the remainder of the time as a pretrial detainee.[65] Accordingly, I will consider Chimney's claims that are based on acts or omissions before January 23, 2020 and after October 30, 2020 under the Eighth Amendment, and unless otherwise noted consider Chimney's claims under the Fourteenth Amendment.

As noted above, my initial review order allowed Chimney's deliberate indifference claims to proceed against the following defendants: Deborah Broadley, Dr. Ingrid Feder, Shaina Jones, Jane Ventrella, and two more defendants referred to simply as "Paul" and "Ann." *See Chimney*, 2021 WL 5281608, at *11. Other than "Paul" and "Ann" who have yet to be served with the complaint, the other four defendants Broadley, Feder, Jones, and Ventrella move for summary judgment on Chimney's deliberate indifference claims.

### *Broadley*

Chimney's deliberate indifference claim against nurse Deborah Broadley primarily rests on his allegations that she failed to follow up in January 2021 about a cyst behind his right knee. I will analyze this claim under the Eighth Amendment because Chimney was a sentenced prisoner at the time.

According to Broadley's motion for summary judgment, she was not deliberately indifferent because "[n]othing in the results showed any medical emergency requiring immediate

---

[64] Doc. #80-2 at 1 (¶ 2).
[65] *Ibid.*

attention."[66] Chimney counters that the cyst was sufficiently serious to merit follow-up treatment.[67] But Chimney provides no evidence for this claim, which in any event amounts to nothing more than a disagreement about appropriate treatment. And "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim." *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011).

Broadley allegedly engaged in other actions during this period—reviewing, notating, and sending Chimney's records to medical staff, processing a referral for Chimney, conversing with Chimney about his medical problems, and informing him that she could not locate his medical records at any hospital or CVS in Connecticut in the last five years. But nothing about these actions suggests that Broadley was even negligent, much less that she acted with culpable recklessness as must be proved to support a deliberate indifference claim.

Chimney further alleges that in December 2020, Broadley warned him that he would be placed in "lock up" if he kept asking for help.[68] But this allegation forms the basis for a retaliation claim, not a claim that Broadley was deliberately indifferent to Chimney's serious medical needs. Because of Chimney's failure to exhaust his administrative remedies, I have already granted summary judgment for the defendants on Chimney's First Amendment retaliation claim.

In any event, the retaliation claim fails on the merits because Chimney does not allege that Broadley followed through on the alleged threat. *See Hill v. Chalanor*, 128 F. App'x 187, 189 (2d Cir. 2005). To the extent Chimney instead argues that Broadley's threat forms the basis of a deliberate indifference claim, I will analyze this claim under the Eighth Amendment because

---

[66] Doc. #80-6 at 4 (¶ 16).
[67] Doc. #115-5 at 3 (¶ 18).
[68] *Ibid.* (¶ 20).

Chimney was a sentenced prisoner at the time. The Second Circuit has held that a verbal threat to a prisoner is "not a sufficient basis for a claim of Eighth Amendment violation" when the prisoner "did not present evidence of any injury resulting from those threats." *Felder v. Filion*, 368 F. App'x 253, 256 (2d Cir. 2010). Chimney has not presented any evidence of injury resulting from Broadley's alleged threat. Therefore, I will grant summary judgment against Chimney with respect to his claim for deliberate indifference against Broadley.

### Dr. Feder

Chimney contends that Dr. Feder was deliberately indifferent with respect to three different conditions: chest pain, sleep apnea, and pain medication.[69] In my initial review order, I permitted Chimney's deliberate indifference claim to proceed against Dr. Feder with respect to Chimney's allegation that Dr. Feder called him a "complainer" and "a pain himself" and walked away when Chimney complained about discomfort in his chest. *See Chimney*, 2021 WL 5281608, at *8. The defendants argue that Chimney's complained-of chest discomfort does not satisfy the first requirement of a deliberate indifference claim because it may have stemmed from a chest infection, which is not a serious medical problem.[70] But in an affidavit, Chimney clarifies that he complained to Dr. Feder of chest *pain*.[71]

Whether chest pain is a serious medical need depends on the pain's severity. "Severe chest pain, a symptom consistent with a heart attack, is a serious medical condition." *Campbell v. Barone*, 2022 WL 5187378, at *4 (D. Conn. 2022) (quoting *Mata v. Saiz*, 427 F.3d 745, 754 (10th Cir. 2005)). But where the chest pain is only "slight," or the plaintiff does not allege that he actually suffered injury from the lack of treatment, courts in this Circuit have

---

[69] Doc. #115-9 at 3 (¶ 12.B).
[70] Doc. #80-1 at 32–33.
[71] Doc. #115-9 at 3 (¶ 12.B).

found that chest pain does not qualify as a serious medical condition. *See Smith v. Suprina*, 2022 WL 1720398, at *4 (E.D.N.Y. 2022); *Shepard v. Kelly*, 2021 WL 1600495, at *3 (S.D.N.Y. 2021) (citing cases); *McCoy v. Goord*, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003).

Chimney does not allege that his chest pain was severe, although he states that "the misconduct has went on so long until plaintiff's health is worse … even caused plaintiff to have a stroke in His (plaintiff's) sleep June 16, 2022."[72] But Chimney has provided no evidence that the stroke, which occurred at least one and a half years after his encounter with Dr. Feder, had anything to do with his complained-of chest pain.[73] And even if Dr. Feder's failure to treat Chimney's chest pain led to Chimney suffering a stroke, Chimney has not alleged any facts to suggest that Dr. Feder knew or should have known that failing to treat Chimney's chest pain would pose a substantial risk to Chimney's health.

As to the remaining medical conditions—sleep apnea and pain medication—the initial review order did not allow Chimney to proceed against Dr. Feder with these claims. *See Chimney*, 2021 WL 5281608, at *8. In any event, Chimney does not point to facts showing that Dr. Feder knew or should have known that serious harm could befall Chimney as a result of her alleged failure to respond. In short, Chimney's allegation that he told Dr. Feder about "help with sleep apnea" and "pain medication" is simply too vague to make out a claim for deliberate indifference. Therefore, I will grant summary judgment against Chimney with respect to his deliberate indifference claim against Dr. Feder.

***Jones***

Chimney alleges that nurse Shaina Jones was deliberately indifferent with respect to the processing of Chimney's referral-to-nursing form. But a nurse met with Chimney the same day

---

[72] Doc. #115 at 5 (¶ 15).
[73] *See supra* note 28 (explaining that Chimney was transferred from CRCC on November 23, 2020).

that Jones processed the referral-to-nursing form. And Chimney does not otherwise point to any other evidence that Jones failed to provide him medical treatment. Therefore, I will grant summary judgment against Chimney with respect to his deliberate indifference claim against Jones.

### *Ventrella*

Chimney's deliberate indifference claim against nurse Jane Ventrella rests on his allegations that she was responsible for a two-day delay in his receiving medical treatment. He alleges that he "was not seen by defendant until (after 2 days of complaining for not rec[ei]ving medication, on) November 25, 2020, with 2 potentially life threatening conditions (High Blood Pressure, Diabetes Mellitus)."[74]

"When the basis for a prisoner's claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment," the Court "examines whether the delay itself created a risk of harm." *Valdiviezo v. Boyer*, 752 F. App'x 29, 32 (2d Cir. 2018). "In considering whether a delay caused a risk of harm, a court may consider the absence of adverse medical effects or demonstrable physical injury." *Ibid*.

Chimney has "proffered no evidence, nor did he even allege, that any delay exacerbated his injury." *Washington v. Artus*, 708 F. App'x 705, 709 (2d Cir. 2017). Chimney therefore fails to raise a material dispute of fact as to whether the two-day delay in treatment by Ventrella violated the Eighth Amendment. *See ibid*.; *Valdiviezo*, 752 F. App'x at 32; *Bilal v. White*, 494 F. App'x 143, 145–46 (2d Cir. 2012).

Chimney otherwise fails to show Ventrella's personal involvement in any alleged deprivation of medical care. In order "to establish a defendant's individual liability in a suit

---

[74] Doc. #86 at 1 (¶ 6).

brought under § 1983, a plaintiff must show, *inter alia,* the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Therefore, I will grant summary judgment against Chimney with respect to his claim for deliberate indifference against Ventrella.

### Classification levels

Chimney also alleges that the defendants altered his medical and mental health classification levels to attack his character, retaliate against him, and deny him treatment.[75] I have already granted summary judgment to the defendants on Chimney's First Amendment retaliation claims. To the extent the alleged record alterations form the basis of a deliberate indifference claim against any the defendants, any such claim fails as a matter of law. Chimney's mental health level remained at 1—the lowest classification—during his period of incarceration, and his medical level ranged between 2 and 3 out of 5. Chimney does not explain how these levels were inaccurate, much less how the calculation of these levels suggests that any of the named defendants acted with deliberate indifference to his serious medical needs.

### State law claims

Having granted summary judgment on Chimney's federal claims, I turn to his state claims. I noted in my initial review order that "[i]f there are no facially plausible federal law claims against any of the named defendants, then the Court would likely decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367." *Chimney*, 2021 WL 5281608, at *1 n.4. Because the state courts of Connecticut are best positioned to address Chimney's state law claims and because there are no facially plausible federal claims against the defendants, I decline to exercise supplemental jurisdiction over Chimney's state law

---

[75] Doc. #86-1 at 2 (¶¶ 4–7), 8 (¶ 48); Doc. #115 at 5 (¶ 15).

claims. *See* 28 U.S.C. § 1367(c)(3); *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 117–18 (2d Cir. 2013); *Williams v. Katz*, 2022 WL 3646200, at *6 (D. Conn. 2022). I will therefore dismiss Chimney's remaining state law claims against the named defendants who have moved for summary judgment without prejudice to Chimney's right to seek any relief that may be available against them in state court.

## CONCLUSION

For the reasons set forth above, the Court GRANTS the named defendants' motions for summary judgment (Docs. #61 and #80). This action remains pending against defendants "Paul" and "Ann," and the Court will enter a separate order with respect to service of these two defendants.

It is so ordered.

Dated at New Haven this 16th day of February 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge